739 P.2d 372

**MAGIC VALLEY POTATO SHIPPERS,**
**Plaintiff-Appellant,**

v.

**CONTINENTAL INSURANCE and Merrill Paslay Agency,**
**Defendants-Respondents.**

No. 16622.

Supreme Court of Idaho.

June 16, 1987.

---

Harry C. DeHaan, Twin Falls, for plaintiff-appellant.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent Continental Ins., David E. Day argued.

Harwood & McColl, Boise, for defendant-respondent Paslay Agency, Bart W. Harwood argued.

BAKES, Justice.

This is an appeal by Magic Valley Potato Shippers (MVP) from summary judgment orders entered in favor of respondents Continental Insurance (Continental) and the Merrill Paslay Agency (Paslay). After reviewing the facts in a light most favorable to MVP, the party opposing the motion, *Jones v. Jones*, 100 Idaho 510, 601 P.2d 1 (1979), we have concluded that the district court did not err in granting summary judgment to Continental Insurance and the Merrill Paslay Agency. *Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n*, 105 Idaho 509, 670 P.2d 1294 (1983).

The factual record produced in this case is based on affidavits submitted by the parties. Those affidavits demonstrate that MVP entered into a contract with Harper to purchase a quantity of potatoes which were stored in Harper's storage facility. MVP initiated performance under the contract by picking up approximately $25,000 worth of Harper's potatoes; however, MVP failed to pay for those potatoes. MVP notified Harper that it would not pick up the balance of the potatoes covered by the contract alleging the potatoes were nonconforming. Due to MVP's failure to perform under the sales contract, the potatoes which were not picked up deteriorated and could not be resold, and Harper was unable to pay its bank loans and lost its farm property to the bank. As a result, Harper

sued MVP for breach of contract in failing to (1) pay for the $25,000 worth of potatoes which they did pick up; (2) breach of contract for the balance of the potatoes which they had contracted to buy but refused to pick up; (3) consequential damages; (4) lost income; and (5) punitive damages.

MVP owned two insurance policies issued by Continental and sold by Paslay. The primary policy was a comprehensive business liability policy and the second was a comprehensive umbrella liability policy. MVP tendered the defense of the action to defendant respondent Continental pursuant to the liability policies. Continental refused to defend the suit, asserting several defenses, including that the Harper v. MVP lawsuit was an action arising from contractual liability and was specifically excluded under the policy coverage. MVP defended the suit by Harper and lost. Harper recovered $220,000 in compensatory damages, $130,000 in punitive damages, and $1,500 in costs and $48,000 in attorney fees.

MVP then brought suit against Continental and Paslay claiming (1) MVP was covered by the Continental policies; (2) that Continental had a duty to defend the suit and was therefore liable for attorney fees incurred; (3) Continental's refusal to defend the suit had resulted in the accumulation of additional damages for which Continental was liable; and (4) if Continental is not liable, then Paslay is liable to MVP based on Paslay's representations as to the extent of Continental's policy coverage.

The claim against Paslay was based on the following allegations: Paslay acted as MVP's insurance agent for a number of years. MVP had previously purchased liability insurance through Paslay from the National Farmers Union Property & Casualty Company (NFU). In 1984, MVP, at Paslay's suggestion, replaced the NFU policies with the policies from Continental. At this time Paslay represented that the Continental policy's coverage was as extensive as the NFU policies they replaced. MVP claims that the NFU policy would have covered MVP's liabilities in the Harper suit, and thus Paslay misrepresented the extent of the Continental policy. Paslay defended by claiming that the Continental policy was as comprehensive as the NFU policy. The respondents filed motions for summary judgment.

Oral arguments and affidavits were presented to the court for its consideration. After reviewing the record and hearing oral argument the district court granted summary judgment to Continental stating that "the original case [Harper v. MVP] in this matter giving rise to this particular case was a case dealing with contract issues, and that the insurance policy issued by Continental has a specific exclusion for contractual liability, and therefore find that the summary judgment motion filed by Continental is well-founded and will issue that summary judgment." The district court also granted summary judgment to Paslay stating that "I find that the [Continental] policy was as extensive as the previous [NFU] policy."

## I

The relevant portions of the primary Continental policy state:

### "COVERAGE B—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

. . . .

"B. *property damage*

"to which this insurance applies, *caused by an occurrence. . . .*

### "Exclusions

"This insurance does not apply:

"(a) *to liability assumed by the insured under any contract or agreement . . .;*

. . . .

"(k) to **property damage** to

. . . .

"(3) property in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control;

. . . .

"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

"(1) a delay in or lack of performance by or on behalf of the **named insured** of any contract or agreement, ...

. . . .

## "VI. DEFINITIONS

"When used in this endorsement (including endorsements forming a part hereof):

. . . .

" '**occurrence**' means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

. . . .

" '**property damage**' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period." (Emphasis added.)

MVP's claim against Continental can only be viable if the Harper v. MVP lawsuit involved "property damages" caused by an "occurrence." Further, from its clear wording, the insurance policy excludes coverage to MVP of "liability assumed by the *insured* under any contract or agreement...." [1] MVP argues that, because it failed to pick up the potatoes identified in the contract, those potatoes spoiled and that this resulted in property damage to Harper which was, at least in part, the underlying basis for the Harper v. MVP lawsuit.

 A review of the record does not support MVP's claim that at least part of the underlying Harper/MVP lawsuit involved property damage. The amended complaint filed in the Harper/MVP suit shows that Count I was for breach of con-

tract for failure of MVP to pay for the potatoes picked up by MVP. Count II was for breach of contract seeking damages for the potatoes covered by the contract which MVP had failed to pick up. Counts III and IV sought consequential and economic damages resulting from financial losses suffered by Harper directly attributable to MVP's breach of the contract. Count V sought punitive damages to punish and deter MVP for its intentional breach of the contract. The instructions given in the Harper v. MVP case described Harper's claims against MVP as follows:

"In this case the plaintiff, E.S. Harper Co., Inc., claims that these are the facts:

" 'That the E.S. Harper Company contracted with the Magic Valley Potato Shippers to sell their potatoes for a minimum guaranteed price of $8.00 less some tare. That the Magic Valley Potato Shippers refused to pick up the Harper's potatoes when asked to and continued to delay until it was so late, very few of the Harper potatoes could be salvaged and resold.

" 'Thus, the plaintiff seeks to recover from the defendant: the payment for the amount of potatoes that Harper's had in storage for Magic Valley Potato Shippers under their contract at the minimum price of $8.00 less tare. For the loss of Harper's equity in their farm which the bank took back due to the Harper's inability to make payments on their loan. Plus, the loss of income for Ed Harper and Flo Harper. And last, for punitive damage to prevent the Magic Valley Potato Shippers from treating other farmers in a similar manner.' "

Both the amended complaint and the district court's instructions to the jury indicate that the Harper v. MVP lawsuit was an action for breach of contract, and did not involve any claim for damages in tort. MVP has failed to demonstrate that damage to property was at issue in the underlying suit. The Harper v. MVP lawsuit was a contract action, and there was no allegation of either "property damage" or an "occurrence" within the meaning of the

---

**1.** It should also be noted that MVP's claim against Continental does not extend to the comprehensive umbrella liability policy because the

claim must reach a total of $500,000 before it will be covered by that policy. Harper recovered less than $500,000 in damages from MVP.

policy. Additionally, the liability in Harper v. MVP was "assumed by [MVP] under [its] contract" with Harper, and thus the contract exclusion was applicable. There were no genuine issues of material fact on the policy coverage issues and, accordingly, the district court's granting of summary judgment for Continental Insurance is affirmed.

## II

■ MVP's complaint against Paslay alleged that he represented to MVP that the Continental insurance policy coverage was as extensive or more extensive than the NFU policy coverage. A party alleging fraudulent misrepresentation has the burden of proving all elements by clear and convincing evidence. *Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980). After reviewing the evidence in a light most favorable to MVP, it is clear that MVP has failed to carry this burden.

■ We find after comparing comprehensive business policies from Continental Insurance and comprehensive business policies from National Farmers Union Property & Casualty Company, it is evident that the two policies are virtually identical.[2] With regard to the comprehensive umbrella liability policies, MVP failed to introduce its last National Farmers Union Property & Casualty Company policy into the record, and the record does not contain a copy of the Continental Comprehensive Umbrella Policy. Thus, we cannot compare those policies. It is evident that MVP has failed to carry its burden of proving all elements of its claim of misrepresentation by clear and convincing evidence. The granting of summary judgment by the district court is affirmed.

Costs to respondent. No attorney fees.

SHEPARD, C.J., and DONALDSON, BISTLINE and HUNTLEY, JJ., concur.

2. The primary general liability policies which are at issue are set out below. Both exclude liability coverage derived from contract actions. The primary Farmers policy provides liability coverage as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury, or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

It specifically excludes coverage for liability: "assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

The primary Continental policy procured for appellant by Paslay in 1984 provides liability coverage as follows:

"I. COVERAGE A—BODILY INJURY LIABILITY

"COVERAGE B—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlments."

It specifically excludes coverage for liability: "assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmenlike manner."