# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39059-2011

| | | |
|---|---|---|
| DAVE'S INC., an Idaho Corporation d/b/a Dave's Construction, | ) | Boise, December 2012 Term |
| Plaintiff, | ) | 2012 Opinion No. 146 |
| v. | ) | Filed: December 20, 2012 |
| D. RICHARD LINFORD and LINDSEY LINFORD, husband and wife, | ) | Stephen W. Kenyon, Clerk |
| Defendants, Third-Party Plaintiffs, Appellants, | ) | |
| v. | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, | ) | |
| Third-Party Defendant, Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Deborah A. Bail, District Judge.

The judgment of the district court is affirmed.

Neil D. McFeeley; Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise; argued for appellants.

Jeffrey A. Thomson; Elam & Burke, P.A., Boise; argued for respondent.

_____

EISMANN, Justice.

This is an appeal from the grant of summary judgment against insureds who contended that the liability coverage provision in their homeowner's policy required the insurer to defend a lawsuit brought by a contractor the insureds had hired to repair fire damage to their home and to remodel the home and that the insurer was required to indemnify against any recovery by the

contractor. We affirm the judgment of the district court and award attorney fees on appeal to the insurer.

## I.

## Factual Background.

On January 17, 2007, the home of Richard and Lindsey Linford was damaged by fire. Their home was insured by State Farm Fire and Casualty Company, and they promptly submitted a claim under the policy. By letter dated January 19, 2007, a State Farm representative offered them three options for repairing their home, and the Linfords chose an option that entailed them hiring their own contractor to make the repairs. State Farm estimated the cost of the repairs to be $153,751.40, and it paid the Linfords that sum.

On March 20, 2007, the Linfords entered into a contract with a contractor to repair the home for the amount of State Farm's estimate. On May 9, 2007, they entered into a separate contract to have the contractor remodel the undamaged part of their house. The remodel contract provided that the Linfords would pay the cost of material, the cost of subcontractors plus 20%, and labor at $50.00 per hour per man. State Farm increased its estimate of the cost to repair the home several times to the sum of $197,065.67, but the contractor contended that it was entitled to be paid more than the estimate.

On August 13, 2009, the contractor filed this action against the Linfords contending that it substantially completed the construction on April 25, 2008, and that the amount owing as of June 4, 2009, together with accrued interest, was the sum of $91,357.82 for both the fire damage and the remodel. The Linfords answered and filed a counterclaim against the contractor alleging that the contractor had agreed to repair the fire damage for $153,751.40 and that the Linfords had already paid $159,494.17, which was more than the contract price. They also alleged that they had paid the contractor $73,390.10 under the remodeling contract, which was $24,668.87 more than the value of that work. They asked for dismissal of the complaint and damages against the contractor in an amount to be proved at trial. The Linfords also filed a third-party claim against State Farm alleging that it had failed to fully pay for the repairs to the house; that it was required to indemnify them for the expenses they incur in defending the contractor's lawsuit; that it had breached the covenant of good faith and fair dealing; and that it had committed the tort of insurance bad faith.

2

Under Coverage A, the insurance policy insured the Linfords' house against accidental direct physical loss. By written agreement dated June 2, 2010, the Linfords and State Farm agreed "to resolve and set the amount of loss under Coverage A of the Policy by appraisal." A third party was mutually selected to conduct the appraisal, and on October 13, 2010, he submitted his determination that the replacement cost value of the fire damage was $205,757.63. By letter dated November 1, 2010, State Farm sent the Linfords a payment of $8,691.96, which was the difference between the appraisal and the amount already paid.

On November 3, 2010, State Farm moved for partial summary judgment on the issues of duty to defend the contractor's action against the Linfords and duty to indemnify them for any sums that the contractor may recover against them. On January 31, 2011, State Farm moved for partial summary judgment on the claims of breach of contract, breach of the covenant of good faith and fair dealing, and bad faith. After the matters were briefed and argued, the district court granted both motions. It entered judgment in favor of State Farm dismissing the third-party claim with prejudice, and it certified that judgment as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. The Linfords timely appealed.

On January 11, 2011, the Linfords moved for partial summary judgment against the contractor. In response, the contractor filed his affidavit stating that the total charge for the fire repairs and the remodel was $294,341.87 and that the amount owing by the Linfords, after deducting payments and credits, was $119,722.79, plus interest. The district court denied the Linfords' motion for partial summary judgment.

The contractor's cause of action against the Linfords was tried to the court on May 1 and 2, 2012.[1] The court found that the contractor had made multiple estimates regarding the amount of its charges attributable to the fire renovation, but it had contractually agreed that the work would be done within the State Farm estimates. The court held that the third-party appraisal done pursuant to the agreement between the Linfords and State Farm established the amount due for the fire restoration. It concluded that the Linfords had paid the amount owing for the fire restoration in full, but they still owed the contractor $10,278.81, plus interest, under the remodel contract.

---

[1] The matter was tried to the Hon. Gerald F. Schroeder, Senior District Judge.

## II.
### Did the District Court Err in Holding that State Farm
### Did Not Have a Duty to Defend the Linfords?

The Linfords argue on appeal that the district court erred in determining that State Farm had no duty to defend them against the contractor's claims in this lawsuit. They contend that the duty to defend arose under the provisions of both Coverage A and Coverage L.

In order for the insurer to have a duty to defend, the insurance policy must provide that the insurer has a duty to defend the insured against the type of claim alleged. *Constr. Mgmt. Sys., Inc. v. Assurance Co. of America*, 135 Idaho 680, 683, 23 P.3d 142, 145 (2001) (duty to defend against a specific type of advertising injury did not apply to copyright infringement); *Foremost Ins. Co. v. Putzier*, 100 Idaho 883, 889, 606 P.2d 987, 993 (1980) ("The policy provision giving rise to the duty to defend is addressed only to direct actions against the insured for damages, and is totally inapplicable where the action is for a declaration of rights under the policy itself."). For there to be a duty to defend, the complaint's allegations, in whole or in part, when read broadly, must allege a claim to which the duty to defend applies under the terms of the insurance policy. *Constr. Mgmt. Sys*, 135 Idaho at 682-83, 23 P.3d at 144-45.

**Coverage A.** The Linfords' house was covered under Coverage A for "accidental direct physical loss to the property" from fire and smoke, among other hazards. With respect to such a loss, subsection 1.a.(2) of the section of policy dealing with loss settlement for damage to the house provided that "when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less." The Linfords argue on appeal that State Farm's obligation to pay "the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property" includes any expenses they incurred in defending the contractor's lawsuit.

State Farm points out in its brief that the Linfords did not argue in the district court that there was a duty to defend under Coverage A. The Linfords acknowledge in their reply brief that "[i]t is well established in Idaho that an appellate court is 'limited to the evidence, theories and arguments that were presented . . . below,' " but they contend that they adequately raised this issue in the district court because they argued that State Farm had a duty to defend under the

4

insurance policy and there was a copy of the policy in the record. They add, "If this Court accepts State Farm's limited view [that they were required to cite to the district court the particular provision in the policy upon which they were relying], then there would be no reason to file additional briefing on appeal because the parties would essentially be stuck with the exact arguments and authorities they raised below."

The district court ruled based upon the issues presented to it. It was not required to search the insurance policy in order to find language upon which to construct a fanciful argument supporting the Linfords' contention that there was a duty to defend. "This Court will not consider issues raised for the first time on appeal," *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011), and therefore we need not address the contention that there was a duty to defend under Coverage A.

**Coverage L.** Coverage L provides personal liability coverage, and it includes an obligation to provide a defense for a covered claim or lawsuit against the insured. The Linfords argue that State Farm had an obligation under Coverage L to provide a defense to the contractor's lawsuit. Coverage L is entitled "PERSONAL LIABILITY," and it provides:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
> 2. provide a defense at our expense by counsel of our choice.

The Linfords contend that the contractor's lawsuit was brought against them "because of . . . property damage" covered by the insurance. They argue that but for the fire, they would not have engaged the contractor to repair the damage, and but for State Farm failing to pay the Linfords the sum claimed by the contractor for repairing the fire damage, the contractor would not have sued the Linfords. They state that the contractor's lawsuit was therefore "brought 'because of' physical damage" to their home and therefore State Farm had a duty to defend the contractor's lawsuit. Their contention fails according to the unambiguous terms of the policy.

First, the insurance policy expressly provides that the duty to defend under Coverage L only applies to a lawsuit against an insured "for damages because of bodily injury or property damage to which this coverage applies," and the words "this coverage" obviously mean Coverage L. The policy expressly excludes the Linfords' home from Coverage L. It states,

5

"Coverage L does not apply to: . . . property damage to property owned by any insured." Therefore, even assuming that the contractor's lawsuit could be construed as having been brought against the Linfords "because of . . . property damage" to the Linfords' home, Coverage L does not provide coverage for property damage to their home.

Second, the contractor's lawsuit was not one to recover "for damages because of . . . property damage." Coverage L provides liability insurance. The lawsuit filed by the contractor sought to recover for the Linfords' alleged breach of the contracts between them and the contractor, for the breach of the covenant of good faith and fair dealing implied in those contracts, and for unjust enrichment. There was no claim, even broadly read, that the Linfords damaged any property of the contractor.

In *Magic Valley Potato Shippers v. Continental Ins.*, 112 Idaho 1073, 739 P.2d 372 (1987), the insured had contracted to purchase potatoes that were in the seller's storage facility, but the insured refused to pick up or pay for a portion of the potatoes on the ground that they did not conform to the contract. Because the insured did not pick up the potatoes, they deteriorated and could not be resold by the seller. The seller then sued the insured and ultimately recovered compensatory and punitive damages, along with court costs and attorney fees. The insured had tendered the defense of the lawsuit to its liability insurer, and it refused to defend the lawsuit. The insured then sued its insurer claiming, among other things, that the insurer had a duty to defend under the terms of the insurance policy. The insured argued that the seller's lawsuit was one to recover "sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence." *Id*. at 1075, 739 P.2d at 374. The insured argued that "because it failed to pick up the potatoes identified in the contract, those potatoes spoiled and that this resulted in property damage to [the seller] which was, at least in part, the underlying basis for the [seller's] lawsuit." *Id*. at 1076, 739 P.2d at 375. This Court held that the insurer had no duty to defend the seller's lawsuit. We reasoned that the insured's claim against the insurer was viable only if the seller's lawsuit "involved 'property damages' caused by an 'occurrence,' " *id*.; that the seller's complaint and the jury instructions show that the seller's lawsuit "was an action for breach of contract, and did not involve any claim for damages in tort," *id*.; that the insured "has failed to demonstrate that damage to property was at issue in the underlying suit," *id*.; and the seller's lawsuit "was a

6

contract action, and there was no allegation of either 'property damage' or an 'occurrence' within the meaning of the policy," *id*. at 1076-77, 739 P.2d 375-76.

The Linfords seek to distinguish the *Potato Shippers* case on the basis of the Court's statement that the insured's liability in the seller's lawsuit was within the scope of an exclusion for "liability assumed by the insured under any contract or agreement." *Id*. at 1077, 739 P.2d at 376. However, that was an additional holding of the Court which was independent of the holding that the seller's action for breach of contract was not an action to recover for property damage. After holding that the "lawsuit was a contract action, and there was no allegation of either 'property damage' or an 'occurrence' within the meaning of the policy," *id*. at 1076-77, 739 P.2d at 375-76, the Court stated, "Additionally, the liability in *Harper v. MVP* was 'assumed by [MVP] under [its] contract' with Harper, and thus the contract exclusion was applicable." *Id*. at 1077, 739 P.2d at 376 (brackets in original) ("MVP" is the insured and "Harper" is the seller).

The district court correctly held that the insurance policy did not provide that State Farm had a duty to defend the contractor's lawsuit against the Linfords.


### III.
### Did the District Court Err in Dismissing the Linfords' Claims
### for Breach of Contract and Bad Faith?


In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id*. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id*.

**Breach of Contract.** As mentioned above, by a written agreement dated June 2, 2010, the Linfords and State Farm agreed "to resolve and set the amount of loss under Coverage A of the Policy by appraisal." The appraisal was completed, and State Farm paid the loss according to

that appraisal. The Linfords argue that the district court erred in dismissing their breach of contract claim because the appraisal did not cover the entire amount that State Farm was obligated to pay under Coverage A and such amount could not be determined until the lawsuit filed by the contractor was resolved. They argue that the appraisal was to determine the amount of their loss only until the repairs were completed and that once they were completed the insurance policy required State Farm to pay any additional amount that they actually spent to repair their home. Their argument has no merit.

First, determination of the amount of the loss did not have to await the outcome of the contractor's lawsuit. The insurance contract did not purport to indemnify the Linfords from the claims of the contractor that they hired to repair the fire damage. The insurance contract specified the basis for determining the amount of the loss, and the Linfords were free to engage a contractor on different terms. The policy did not provide that State Farm was required to pay according to the terms of the contract negotiated between the Linfords and their contractor, nor did it require State Farm to pay whatever damages the contractor recovered against the Linfords up to the policy limits. The amount of the loss under the policy and the amount that the Linfords were required to pay their contractor could be two separate sums. Thus, either State Farm or the Linfords could demand that the amount of the loss be set by appraisal pursuant to the terms of the insurance policy without awaiting the final determination of the contractor's claims against the Linfords.

Second, the Linford's interpretation of the insurance policy that they claim supports their argument is unreasonable and clearly erroneous. The applicable loss settlement provision in the insurance policy provides:

<strong>SECTION I – LOSS SETTLEMENT</strong>

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

**COVERAGE A - DWELLING**
1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**
    a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:
        (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the

8

damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

. . . .

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**
a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

The insurance policy provided with respect to Coverage A, "If you [the insured] and we [State Farm] fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal." The provision then specifies a procedure for the appraisal, which the parties agreed to modify in their agreement dated June 2, 2010. The Linfords argue that the appraisal provision only applied to "the amount of loss"; that only subsection (1) quoted above applies to the amount of the loss; and that because subsection (2) quoted above does not include the word "loss," it is a sum that State Farm is required to pay in addition to the amount of the loss. Therefore, they assert that the agreement to resolve the amount of the loss under Coverage A did not include the amount that State Farm was obligated to pay under subsection (2).

"In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities. This determination is a question of law. In resolving this question of law, the Court must construe the policy 'as a whole, not by an isolated phrase.' " *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (citations omitted). A provision in an insurance contract must be read within the context in which it occurs. *Purvis v. Progressive Cas. Ins. Co.*, 142 Idaho 213, 216, 127 P.3d 116, 119 (2005).

The heading of this section of the policy is entitled "*LOSS SETTLEMENT*." (Emphasis added.) Under that heading, the policy states, "We will *settle* covered property *losses* according to the following." (Emphases added.) Then, with respect to a dwelling, there are two major

9

subdivisions. The one applicable to the Linfords is entitled, "A1 - Replacement Cost *Loss Settlement* - Similar Construction." (Emphasis added.) The other is entitled, "A2 - Replacement Cost *Loss Settlement* - Common Construction." (Emphasis added.) It is clear that this entire section of the policy deals with the settlement of losses. The Linfords' argument is based upon taking the sentence in subsection (2) out of the context in which it occurs and arguing that it has nothing to do with settling a loss. That is an unreasonable construction of the policy and is clearly erroneous.

The Linfords also allege that State Farm breached the insurance contract by breaching the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing obligates parties to cooperate with one another and to perform the obligations imposed by their agreements. Express terms of a contract may not be overridden by those implied from the covenant of good faith and fair dealing." *Huyett v. Idaho State Univ.*, 140 Idaho 904, 910, 104 P.3d 946, 952 (2004) (citation omitted).

The Linfords argued to the district court that if the contractor prevailed in its lawsuit, "then State Farm's refusal to pay will violate, nullify and significant[sic] impair the Linfords benefit of the Policy because the Linfords will have to pay for work and damages that were covered by the Policy." State Farm moved for summary judgment on the claims of breach of contract and bad faith after it and the Linfords had settled the amount of the loss due to the fire damage to the house and it had paid the amount of that loss in full. Thus, as discussed above, the total amount that State Farm was required to pay under the insurance policy had been determined between the Linfords and State Farm. If the contractor recovered a greater amount than that from the Linfords, State Farm would not have been required to pay it under the policy.

The Linfords next argued that State Farm breached the covenant of good faith and fair dealing by rejecting their tender of defense with respect to the contractor's lawsuit. As explained above, the insurance contract only required that State Farm provide a defense if the Linfords were sued for damages because of bodily injury or property damage, and they were sued for breach of contract. The implied covenant cannot override the terms of the policy.

The Linfords finally argued that "State Farm has significantly hindered any chance the Linfords would have to settle with [the contractor] because of their direct negotiation [with the contractor] and subsequent increase of the estimates." There are no facts in the record to support

10

the Linfords' contention that State Farm's actions hindered any chance the Linfords had to settle with the contractor.

The Linfords entered into two separate contracts with the contractor, one to repair the fire damage and the other to remodel the house. According to Mr. Linford, the contractor "never separated its invoices between the two contracts" and the Linfords were "forced to estimate how much was due and owing under the Remodeling Contract." After State Farm had paid the Linfords a total of $205,757.63 to settle the loss for the fire damage, they moved for summary judgment against the contractor. In their supporting memorandum, they argued that pursuant to the fire-damage contract, the contractor was only entitled to $197,065.67 (the amount of State Farm's last estimate before the settlement), less $23,688.68 for work that the contractor did not perform and/or pay for, leaving at most $173,396.99 as the contract price for the repair of the fire damage. They also argued that the contractor had admitted that its cost to complete the remodeling contract was $48,721.23, so that the total sum to which the contractor was entitled for both contracts could not exceed $222,884.27. They concluded that because they had paid the contractor a total of $232,884.27, they were entitled to summary judgment because the contractor had been paid in full. In response, the contractor's president filed an affidavit stating that "the total charges for the entire project under both of the above-referenced agreements is $294,341.87" and that "the total amount still due and owing for the entire project, with accrued interest through December 23, 2010, remains $119,722.79." The district court denied the Linfords' motion for summary judgment with respect to the contractor's claims.

The Linfords were unable to settle with their contractor after State Farm had paid the total amount owing under the insurance policy in full. The contractor claimed that it was entitled to receive $71,467.60 more for its labor and materials than the Linfords acknowledged. They did not point to any facts indicating that the contractor would have agreed to their amount had State Farm paid more quickly.

The district court did not err in granting summary judgment dismissing the Linfords' claims for breach of the implied covenant of good faith and fair dealing.

**Bad faith.** In order for a first-party insured to recover on a bad faith claim, the insured must show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Robinson v.*

11

*State Farm Mut. Auto. Ins. Co*., 137 Idaho 173, 176, 45 P.3d 829, 832 (2002).  Although the tort of bad faith is not a breach of contract claim, to find that the insurer committed bad faith there must also have been a duty under the contract that was breached.  *Id*. at 179, 45 P.3d at 835.

The Linfords argued to the district court that summary judgment on their bad faith claim must be denied because "[i]t is undisputed that State Farm has rejected the Linfords' tender of defense and request for indemnification against [the contractor's] claim."  As explained above, the insurance policy did not require that State Farm provide a defense to the contractor's lawsuit or indemnify the Linfords from any judgment that the contractor may recover against them.  The Linfords also argued that the insurance policy required State Farm to reimburse them for "all costs they 'actually and necessarily' spend to repair the Home, which State Farm has not done," which, as explained above, was based upon their clearly erroneous construction of the insurance policy.

The district court did not err in dismissing their claim for bad faith.


# IV.
## Is Either Party Entitled to Attorney Fees on Appeal?

The Linfords request an award of attorney fees on appeal pursuant to Idaho Code section 41-1839(1) and (4) and Idaho Code section 12-123.  Because they are not the prevailing party on appeal, they are not entitled to attorney fees under section 41-1839.  *Estate of Dumoulin v. CUNA Mut. Group*, 150 Idaho 517, 520, 248 P3d 1252, 1255 (2011).  Section 12-123 does not apply on appeal.  *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010).

State Farm seeks an award of attorney fees on appeal pursuant to Idaho Code section 41-1839(4), which provides that "attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation."  This appeal certainly qualifies.  It was brought frivolously and without foundation.  We therefore award attorney fees on appeal to State Farm.

## V.
## Conclusion.

We affirm the judgment of the district court.  We award costs and attorney fees on appeal to respondent.

Chief Justice BURDICK, Justices J. JONES, HORTON and J. Pro Tem TROUT
**CONCUR.**