IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41157-2013

| | | |
|---|---|---|
| BANK OF IDAHO, an Idaho banking corporation, | ) ) ) | Idaho Falls, May 2014 Term |
| Plaintiff-Appellant, | ) ) | 2014 Opinion No. 45 |
| v. | ) ) | Filed: June 17, 2014 |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a corporation, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Bonneville County. The Hon. Joel E. Tingey, District Judge.

The judgment of the district court is vacated.

Gregory L. Crockett, Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, argued for appellant.

Charles A. Homer, Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, argued for respondent.

_____

EISMANN, Justice.

This is an appeal from a judgment dismissing an action seeking to recover under a title insurance policy that insured the failure of a developer to construct a fourplex on a specific lot. We vacate the judgment of the district court and remand for further proceedings that are consistent with this opinion.

## I.

## Factual Background.

In January 2007, the Bank of Idaho made two construction loans to developers who planned to construct a fourplex on each of two adjoining lots in the city of Idaho Falls. The bank loaned $227,041.30 to construct a fourplex on Lot 1 and $226,737.80 to construct a fourplex on

Lot 2. Each loan was secured by a separate deed of trust granted in the lot for which the loan was made, but each deed of trust included a provision stating, "In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender . . . ." On February 27, 2009, each deed of trust was amended to add the other lot as collateral.

The bank secured a separate policy of title insurance for each lot that was issued by the predecessor of First American Title Insurance Company. Each policy included an endorsement that the parties understood would insure against loss or damage that the bank might sustain by reason of a multifamily residence not being constructed on the lot.

After discussion with representatives of the city, the developers changed their original plans and built both fourplexes on Lot 2 and built a parking lot with storm water retention and landscaping on Lot 1. The developers later defaulted on their loans, and the bank foreclosed on both deeds of trust. At the foreclosure sale, the bank acquired each lot by making a full credit bid on all amounts due and owing on the note secured by the deed of trust. On June 10, 2010, the bank submitted a claim under the title policy issue with respect to Lot 1 to recover under the endorsement. The insurance company rejected the claim and the bank commenced this action to recover under the policy. In November 2010, the bank sold both lots to a third party for the sum of $360,000.

On January 27, 2012, the bank filed this action seeking to recover under the title insurance policy for the developers' failure to construct a multifamily residence on Lot 1. It filed a motion for partial summary judgment seeking a determination that it was entitled to recover under the policy, and the insurance company filed a motion for summary judgment seeking dismissal of the complaint. The district court granted the insurance company's motion for summary judgment and dismissed this action. The bank then timely appealed.

## II.

**Did the District Court Err in Granting the Insurance Company's Motion for Summary Judgment?**

The district court held that the bank's full credit bid terminated any liability of the insurance company under the terms of the title insurance policy. In so holding, the district court erred.

The endorsement at issue provides as follows:

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i) a **MULTI FAMILY RESIDENCE** (*description of improvement e.g. "a single residence"*) known as **1354 E 16th Street, Idaho Falls, ID 83401** (*street address*), to be located on the land at Date of Policy, or (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

The endorsement, by its terms, does not insure against the failure of the multifamily residence to be constructed upon Lot 1. The endorsement insures that a specific structure is located on the insured property "at Date of Policy," which was January 8, 2007, at 3:40 p.m. On that date, construction had not begun. However, the parties agree that the intent was to insure that the fourplex would be built upon the insured property, and it is undisputed that a multifamily residence was not constructed on Lot 1.

**Section 7(b).** The determination of whether the bank is entitled to recover under the title insurance policy begins with Section 7(b) of the policy. It provides, "In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations." This provision is applicable if "the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations."

**Section 2(a).** Section 2(a) provides:

The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; . . . .

In this case, the bank (an insured) acquired all of the estate by a trustee's sale. Therefore, pursuant to Section 7(b), "then the liability of the Company shall continue as set forth in Section

3

7(a) of these Conditions and Stipulations." Thus, the liability of the insurance company continues as provided in Section 7(a).

**Section 7(a).** Section 7(a) provides:

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

Under Section 7(a), the liability of the insurance company is the least of the alternatives in subsections (i) through (iii). Thus, the insurance company is liable for damages unless its liability is terminated by the provisions of one of those subsections.

*Subsection 7(a)(i).* Under subsection (i), the liability of the company shall not exceed "the Amount of Insurance stated in Schedule A." The amount of insurance in Schedule A is $227,041.30. Under subsection (i), the liability of the insurance company also cannot exceed "the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations," if applicable.

**Section 2(c).** Section 2(c) provides:

(c) **Amount of Insurance**. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) The Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

4

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

***Subsection 2(c)(i).*** Under Section 2(c)(i), the amount of insurance after acquisition of title or the conveyance of title cannot exceed "[t]he amount of insurance stated in Schedule A." That amount is $227,041.30.

***Subsection 2(c)(ii).*** Under Section 2(c)(ii), the amount of insurance after acquisition of title or the conveyance of title cannot exceed "the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy [plus interest and other sums], but reduced by the amount of all payments made." Under the policy, the term "mortgage" is defined to include a deed of trust. The title insurance company contends that "all payments made" includes the full credit bid made by the bank at the trustee's sale. According to the insurance company, its liability is now zero. Thus, the question is whether a full credit bid constitutes "payments made" under this provision of the insurance policy.

"Whether an insurance policy is ambiguous is a question of law over which this Court exercises free review." *Armstrong v. Farmers Ins. Co. of Idaho*, 143 Idaho 135, 137, 139 P.3d 737, 739 (2006). "Unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Howard v. Oregon Mut. Ins. Co.*, 137 Idaho 214, 218, 46 P.3d 510, 514 (2002). "A provision in an insurance contract must be read within the context in which it occurs." *Dave's Inc. v. Linford*, 153 Idaho 744, 751, 291 P.3d 427, 434 (2012). The provision at issue begins with the words "the amount of the principal of the indebtedness secured by the insured mortgage" and ends with the words "but reduced by the amount of all payments made." In this context, the words "payments made" would normally be construed by laymen to mean payments made by the obligor on the principal indebtedness secured by the deed of trust, not a credit bid made by a lender at a trustee's sale.

In addition to construing a provision in the context in which it occurs, "the Court must construe the policy 'as a whole, not by an isolated phrase.'" *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005). Construing "all payments made" to include a credit bid would make Section 2(c)(ii) conflict with Section 9(c). The latter

5

section provides, "Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations." Section 2(a) refers to the acquisition of title by the insured by a trustee's sale. Thus, under Section 9(c), payment in full by any person does not terminate the liability of the insurance company if the person making payment in full was the insured who purchased the property at a trustee's sale. When the lender acquires property subject to a deed of trust at a trustee's sale, the lender typically makes a full credit bid to purchase the property. If "all payments made" in Section 2(c)(ii) included a full credit bid, then it would provide that a full credit bid by the insured terminated the company's liability while Section 9(c) would provide that a full credit bid by the lender would not "terminate all liability of the Company." The conflicting provisions create an ambiguity, which is to be construed strongly against the insurer. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 435, 987 P.2d 1043, 1050 (1999). We therefore hold that the words "all payments made" under Section 2(c)(ii) do not include a full credit bid by the insured at a trustee's sale.

*Subsection 2(c)(iii).* Under Section 2(c)(iii), the amount of insurance after acquisition of title or the conveyance of title cannot exceed "the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty." There is no contention that this provision is applicable to this case.

*Subsection 7(a)(ii).* Subsection (ii) provides that the insurance company's liability cannot exceed "the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations." Section 8 has no application.[1] Section (ii) also provides that the company's liability cannot exceed "the

---

[1] Section 8 provides:

**8. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a

6

amount of the unpaid principal indebtedness secured by the insured mortgage . . . as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs."

**Section 9.** Section 9 provides:

**9. REDUCTION OF INSURANCE: REDUCTION OR TERMINATION OF LIABILITY**.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

*Subsection 9(a).* Subsection 9(a) does not apply in this case because it only reduces the amount of insurance if there are payments under the policy. The company has not made any payments under the policy.

*Subsection 9(b).* Subsection 9(b) may be applicable if the sale of the property by the bank constituted "[p]ayment in part by any person of the principal of the indebtedness." The

---

final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

meaning of that provision was not addressed below, and so we do not address it on appeal. If it is applicable, it would only "reduce the amount of insurance pro tanto." The total amount secured by the deed of trust on Lot 1 was apparently $453,779.10, because it secured the amount of the loan applicable to Lot 1 ($227,041.30) plus all other obligation, debts, and liabilities owing by the developers to the bank, which would include the amount of the loan applicable to Lot 2 ($226,737.80).

*Subsection 9(c).* Subsection 9(c) is not applicable. It provides, "Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company *except as provided in Section 2(a) of these Conditions and Stipulations*." (Emphasis added.) Section 2(a) states that the coverage under the policy shall continue in force "in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage." The bank acquired all of the estate in the land by trustee's sale. Therefore, assuming that the bank's full credit bid constituted "[p]ayment in full by any person or the voluntary satisfaction or release of the insured mortgage," it would not terminate the insurance company's liability.

The district court held: "Under Section 7(a)(ii), there was no unpaid principal indebtedness after the foreclosure sale. Under Section 9, the full credit bid constituted a 'voluntary satisfaction or release of the insured mortgage' which terminated Defendant's liability." The language quoted by the district court is in Section 9(c), but the court ignored the latter part of that subsection which states "except as provided in Section 2(a) of these Conditions and Stipulations." As explained above, Section 2(a) refers to the lender obtaining title to the property in a trustee's sale. That exclusion makes Section 9(c) inapplicable in this case.

**Section 2(b).** Section 2(b) states:

> The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. . . .

Although the title insurance company quotes this provision in its brief, it does not provide any argument as to its applicability. Because the alleged breach of the policy occurred prior to the conveyance of the property by the bank, it does not appear applicable. If the insurance

8

company was contending that this provision was applicable, that assertion was waived because it was not supported by argument and authority. *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012).

For the above reasons, the district court erred in holding that the title insurance company had no liability under the policy. The endorsement provides that "[t]he Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of [a multifamily residence to be built on Lot 1]." The endorsement insures against "loss or damage" that the bank sustains by reason of the failure of the multifamily residence to be constructed on the lot. It does not purport to define what constitutes "loss or damage." The endorsement also provides: "To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements." Therefore, loss or damage would be as otherwise provided in the policy.

Section 7(a) provides:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
> (a) The liability of the Company under this policy shall not exceed the least of:
> (i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;
> (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or
> (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

Subsections (a)(i)–(iii) state limits on the insurance company's liability, but they do not define loss or damage. However, section 7 states that the title insurance policy is "a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy." Because

9

the issue was not addressed below, we express no opinion as to what damages claimed by the bank are covered.

## III.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The bank seeks an award of attorney fees pursuant to Idaho Code section 41-1839(1). That statute provides:

> Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever that fails to pay a person entitled thereto within thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, . . . the amount that person is justly due under such policy, certificate or contract shall in any action thereafter commenced against the insurer in any court in this state, or in any arbitration for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.

*Id.* If the district court determines that the bank is entitled to attorney fees under this statute, then the district court must include reasonable attorney fees for this appeal in its award.

The title insurance company seeks an award of attorney fees on appeal pursuant to Idaho Code sections 12-123 and 41-1839(4). Because it is not the prevailing party on appeal, it is not entitled to an award of attorney fees under either of those statutes.

## IV.

### Conclusion.

We vacate the judgment of the district court and remand this case for further proceedings that are consistent with this opinion. We award appellant costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**

10