# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44117-2016

SHAMMIE L. FISHER,

    Plaintiff-Appellant,

v.

GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2017 Term

2017 Opinion No. 48

Filed: May 26, 2017

Stephen W. Kenyon, Clerk

SUBSTITUTE OPINION, THE
COURT'S PRIOR OPINION
DATED April 28, 2017 IS HEREBY
WITHDRAWN.

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, in and for Ada County.  Hon. Patrick H. Owen, District Judge.

The judgment of the district court is vacated.

James G. Reid, Kaufman Reid, PLLC, Boise, argued for appellant.

Jeffrey A. Thomson, Elam & Burke, P.A., Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Ada County from a judgment dismissing the Plaintiff's action
seeking to recover under an insurance policy for the loss of her house caused when a renter, who
had an option to purchase the house, demolished it. The district court held that coverage for such
loss was excluded under the policy. We vacate the judgment of the district court and remand this
case for further proceedings that are consistent with this opinion.

## I.
## Factual Background.

The Plaintiff, Shammie L. Fisher, was the owner of a house located at 2510 N. 34th
Street in Boise. It was a single-story building that had been built in 1965 and contained 1152
square feet with an attached one-car garage. She purchased a policy of insurance covering the
house from the Defendant, Garrison Property and Casualty Insurance Company.  The policy

period was from March 8, 2012, to March 8, 2013, and she renewed the policy for the period from March 8, 2013, to March 8, 2014.

The Plaintiff married and decided to sell her house. She entered into a "Real Estate Purchase and Sale Agreement" ("Purchase Agreement") dated January 23, 2012, with Ron Reynoso. The Purchase Agreement provided that Mr. Reynoso would purchase the property for $153,000; that the purchase was contingent upon him obtaining financing; that he intended to occupy the property as his primary residence; that the closing would occur no later than March 31, 2013; that Mr. Reynoso would lease the property from March 15, 2012, until March 31, 2013; and that if the he was unable to close before March 31, 2013, the Plaintiff would extend the lease on a month-to-month basis for a period up to September 1, 2013. The Purchase Agreement also included a provision stating: "Buyer intends to make certain improvements to the property upon possession, with the intent to sell the property for a profit which might be prior to the end of the lease period. The buyer is required to give a monthly update for plans/upgrades."

In conjunction with the Purchase Agreement, the Plaintiff and Mr. Reynoso entered into a "Rental Agreement" also dated January 23, 2012. It stated that the move-in date was March 1, 2012, although an addendum to the Purchase Agreement changed the lease start date to March 15, 2012, with the rent prorated accordingly. The Rental Agreement stated that the Plaintiff was obligated to rent the property for a minimum term ending on March 31, 2013 and that "Tenant shall return said premises to Owner is as good condition as when received, reasonable wear and tear excepted."

Within two months of renting the property to Mr. Reynoso, the Plaintiff learned that he had demolished the entire house down to the foundation. She contacted him, and he agreed to rebuild a house on the foundation. He commenced doing so, erecting some rough framing of some interior and exterior walls, but in August 2013 he ceased working on the house and left. The Plaintiff then made a claim under her insurance policy, which the Defendant denied.

On May 27, 2015, the Plaintiff commenced this action seeking to recover for the loss of her house and her personal property. She later filed a motion for partial summary judgment, seeking a ruling that her loss was covered under the policy. In her affidavit in support of that motion, she stated that she had no knowledge that Mr. Reynoso intended to destroy the house; that the improvements that he had discussed with her included new flooring, countertops, light

2

fixtures, paint, and other cosmetic improvements; that she did not authorize him to perform any work to remodel or tear down the house or to perform any structural work; and that he said he would be residing in the house while making improvements.

The Defendant contended that the Plaintiff's loss was excluded by two provisions of the policy: (1) an exclusion for intentional loss and (2) an exclusion for faulty, inadequate or defective work. The Plaintiff moved for partial summary judgment holding that those exclusions did not apply to the facts of this case, and the Defendant moved for summary judgment seeking dismissal of the action based upon those exclusions.

The district court held that there was a genuine issue of material fact regarding the applicability of the intentional loss exclusion, but that the exclusion for faulty, inadequate or defective work did apply. It denied the Plaintiff's motion for partial summary judgment, granted the Defendant's motion for summary judgment, and entered a judgment dismissing this lawsuit with prejudice. The Plaintiff then timely appealed.

## II.
**Did the District Court Err in Granting the Defendant's Motion for Summary Judgment?**

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

Under Coverage A, the insurance policy applied to "the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling." The described location was 2510 N. 34th Street, Boise, Idaho. Thus, Coverage A applied to the dwelling at 2510 N. 34th Street, Boise, Idaho, which was the Plaintiff's house.

The perils insured against under Coverage A were "risk of direct loss to property described in Coverage[] A . . . if that loss is a physical loss to property." Thus, the loss must be a direct physical loss to the Plaintiff's house. The policy then stated

> however, we do not insure loss:
> 1. involving collapse, other than as provided in Other Coverages 10:
> 2. caused by: [a list of causes]

3

3. excluded under General Exclusions.

Under Items 1 and 2, any ensuing loss to property described in Coverage[] A . . . not excluded or excepted in this policy is covered.

There is no contention that the Plaintiff's loss would be excluded pursuant to either Item 1 or Item 2. The contention is that the loss is excluded under Item 3, which is a list of exclusions under the title "General Exclusions." Thus, the policy would cover a direct physical loss to the Plaintiff's house if it was a loss that was not excluded pursuant to the exclusions listed under General Exclusions.

In the district court, the Defendant contended that there were two exclusions that would apply. The first was the intentional-loss exclusion, which provided as follows:

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
. . . .
    h. Intentional Loss, meaning any loss arising out of any act committed:
        (1) by or at the direction of you or any person or organization named as an additional insured; and
        (2) with the intent to cause a loss.

The district court held that there was a genuine issue of material fact as to whether this exclusion applied, and it denied Defendant's motion for summary judgment based upon this exclusion.

The second exclusion raised in the district court was the faulty, inadequate, or defective work exclusion, which provided as follows:

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
. . . .
    c. Faulty, inadequate or defective:
        (1) planning, zoning, development, surveying, siting;
        (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3) materials used in repair, construction, renovation or remodeling; or
        (4) maintenance;
        of part or all of any property whether on or off the Described Location.

Thus, to be excluded under this provision, the direct physical loss to the Plaintiff's house must

have been caused by faulty, inadequate, or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction of part of any property on or off the described location.

"In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities. This determination is a question of law. In resolving this question of law, the Court must construe the policy 'as a whole, not by an isolated phrase.'" *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (citations omitted). "A provision in an insurance contract must be read within the context in which it occurs." *Dave's Inc. v. Linford*, 153 Idaho 744, 751, 291 P.3d 427, 434 (2012). "Unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Howard v. Oregon Mut. Ins. Co.*, 137 Idaho 214, 218, 46 P.3d 510, 514 (2002). An exclusion in the policy must be strictly construed in favor of the insured. *Moss v. Mid-Am. Fire & Marine Ins. Co.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982).

**The loss.** Defendant first asserts that the cause of the loss was the failure of Mr. Reynoso to complete the rebuilding of a house on the foundation that remained after he had demolished the Plaintiff's house. That was clearly not the loss. The loss, as defined in the insurance policy, had to be a direct physical loss to "the dwelling on the Described Location." The described location was 2510 N. 34th St., Boise, Idaho. The dwelling on the Described Location was the Plaintiff's house. Any house that Mr. Reynoso intended to build could not be *the* dwelling *on* the described location.

The insurance policy had a page titled "Your Home Characteristics." The page stated:

> Our mission at USAA is to help protect your financial security. One way we do this is by helping you determine if you're adequately covered in the event of a loss. The estimated minimum rebuilding cost of your home is based on your home characteristics, but only you can decide if this is enough coverage. Our estimates are based on average construction costs and labor costs for geographic areas and may not reflect the unique features of your home or the area you live in.
> On the back of this page, you'll find your home characteristics. . . . .

The above quoted provision of the policy referred to "[t]he estimated minimum rebuilding cost of your home" based upon "your home characteristics." Obviously, "your home" could not refer to a house that Mr. Reynoso may have intended to build after he later demolished the Plaintiff's home.

5

The home characteristics on the back page were as follows:

Your Home Characteristics
YEAR BUILT:  1965
STORIES:  1.0
*SQUARE FEET:  1152

*Total Square Footage: Includes garage square footage if there is living space that is heated or cooled above the garage. It does not include a finished basement or attic.

FOUNDATION (S): CRAWLSPACE
SLAB
EXTERIOR WALL:  WOOD SIDING
ROOF COVERING:  TAR AND GRAVEL
GARAGE TYPE: ATTACHED GARAGE – 1 CAR
INTERIOR WALL PARTITIONS:  DRYWALL
INTERIOR WALL COVERINGS:  PAINT
FLOOR COVERINGS: HARDWOOD
VINYL
KITCHEN: 1 STANDARD
BATHROOMS:  1 STANDARD
FIREPLACE:  1
HEAT & AIR:  HEATING - GAS
CENTRAL AIR CONDITIONING - SAME DUCT
WIRED FOR CENTRAL ALARM:  NO

Again, these characteristics described the Plaintiff's home, not some home that Mr. Reynoso later intended to build on the property.

The house that Mr. Reynoso intended to build could not rationally be described as a "dwelling on the Described Location." There could be no direct physical loss to a house that did not yet exist. The Plaintiff's loss occurred when Mr. Reynoso demolished her house. There is nothing in the insurance policy that states that it insured against the failure of Mr. Reynoso or anyone else to build a new house upon the Plaintiff's lot. Therefore, the loss was the destruction of the Plaintiff's house. It was not the failure of Mr. Reynoso to build a house on the foundation that remained after he had demolished her house.

**The faulty, inadequate, or defective work exclusion.** The Defendant contends that the loss in this case was caused by faulty, inadequate, or defective workmanship, repair, construction, renovation and/or remodeling of the dwelling. The issue is whether any of those words state the cause of the direct physical loss to Plaintiff's house.

The words "faulty," "inadequate," and "defective" are all adjectives.[1] Because adjectives modify nouns or pronouns, the words that follow them are nouns.[2] Therefore, the words "workmanship," "repair," "construction," "renovation" and "remodeling" are all nouns.

**Workmanship.** The destruction of the Plaintiff's house was not caused by any faulty, inadequate, or defective workmanship on the part of Mr. Reynoso. The word "workmanship" as a noun means:

1. the art or skill of a workman
2. the art or skill with which something is made or executed
3. the degree of art or skill exhibited in the finished product
4. the piece of work so produced[3]

There is no evidence in the record that the loss to the house was caused by Mr. Reynoso's lack of skillfulness, artisanship, or expertise in doing his work. It appears that he was quite adept in demolishing the house. Likewise, the only piece of work he produced was some rough framing, but, as explained above, that work was not the direct cause of the Plaintiff's loss to her house. Her house had been demolished before he constructed the rough framing.

**Repair.** The destruction of the Plaintiff's house was not caused by anything that Mr. Reynoso did in performing some repair to her house. "A repair is something that you do to mend a machine, building, piece of clothing, or other thing that has been damaged or is not working properly. . . . Many of the buildings are in need of repair."[4] There is no evidence in the record that the Plaintiff's house was in need of repair or that the loss of her house was caused by repairs that Mr. Reynoso had made or was making to it. As mentioned above, his failure to build a house on the foundation left after he had demolished the Plaintiff's house was not the cause of the loss to her house.

**Construction.** The destruction of the Plaintiff's house was not caused by any construction done by Mr. Reynoso that was faulty, inadequate, or defective. The word "construction" when used as a noun means: "1. the process or act of constructing or manner in

---

[1] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/faulty, inadequate, defective (accessed April 15, 2017).

[2] http://www.grammarbook.com/grammar/adjAdv.asp (accessed April 15, 2017).

[3] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/workmanship (accessed April 15, 2017).

[4] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/repair (accessed April 15, 2017).

which a thing is constructed 2. the thing constructed; a structure."[5] To "construct" something is "to put together substances or parts, esp systematically, in order to make or build (a building, bridge, etc); assemble."[6] The insurance policy did not insure the process or act of constructing the Plaintiff's house. It had been constructed in 1965 and was an existing structure. It insured against the risk of loss to her house if that construction was faulty, inadequate, or defective, and there is no evidence that it was. There is also no evidence in the record of any subsequent construction on the house that was the direct physical cause of the loss. Mr. Reynoso did not perform any construction on her house. An antonym of "construction" is "destruction,"[7] and that is what Mr. Reynoso did to the Plaintiff's house. As stated above, the only construction he performed was putting up some rough framing on the foundation remaining after he had demolished her house.

**Renovation.** The destruction of the Plaintiff's house was not caused by Mr. Reynoso's renovation of her house. The word "renovate" means "to restore (something) to good condition."[8] The word "renovation" means, "The act or process of renovating; the state of being renovated or renewed."[9] There is no evidence that the Plaintiff's home needed to be restored to a good condition or that Mr. Reynoso did any work on her house in order to restore it to a good condition. Instead, he demolished it.

**Remodeling.** The destruction of the Plaintiff's house was not caused by Mr. Reynoso's remodeling of it. The word "remodeling" is a gerund, which is the noun form of a verb. In this case, it is the noun form of the verb "remodel." The word "remodeling" as a noun means "the act of changing or altering the structure, style, or form of something" or the state of being remodeled—"the remodelling of Barcelona's airport."[10] The word "remodeling" in this context means: "Making alterations to an existing structure such that it will be better suited to current

---

[5] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/construction (accessed April 15, 2017).

[6] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/construct (accessed April 15, 2017).

[7] Thesaurus.com. *Roget's 21st Century Thesaurus, Third Edition*. Philip Lief Group 2009. http://www.thesaurus.com/browse/construction (accessed April 17, 2017).

[8] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/renovate (accessed April 15, 2017).

[9] Merriam-Webster, http://www.webster-dictionary.net/definition/renovation (accessed April 15, 2017).

[10] Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/remodeling (accessed April 15, 2017).

needs. This type of work may involve changing the use of interior space by repositioning walls, replacing bathroom or kitchen fixtures, or other such modifications."[11] As stated above, the words in an insurance policy are to be given the meaning applied by lay people in daily usage. *Howard*, 137 Idaho at 218, 46 P.3d at 514. Mr. Reynoso's actions in demolishing the Plaintiff's house down to the foundation would not be considered by lay people as the remodeling of the house. He did not make alterations to an existing structure; he demolished that structure. There was no house left to remodel.

The Plaintiff had authorized Mr. Reynoso to perform some remodeling, such as installing new flooring, countertops, light fixtures, paint and other cosmetic improvements. There is no evidence in the record that he did any remodeling at all, much less that the direct cause of the loss of the Plaintiff's house was caused by any remodeling that had been done.

### III.
### Conclusion.

For the above reasons, the faulty, inadequate, or defective work exclusion does not apply to the loss in this case. We vacate the judgment and remand this case for further proceedings that are in accordance with this opinion.

The Plaintiff also asks that we hold that the district court erred in denying her motion for partial summary judgment that the intentional loss exclusion did not apply to these facts. "An order denying a motion for summary judgment is an interlocutory order from which no direct appeal may be taken. Additionally, an order denying a motion for summary judgment is not subject to review—even after the entry of an appealable final judgment." *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 13, 121 P.3d 938, 944 (2005) (citations omitted).

We vacate the judgment of the district court and we remand this case for further proceedings that are in accordance with this opinion. We award the Appellant costs on appeal.

Chief Justice BURDICK, and Justices JONES, BRODY, and Justice Pro Tem KIDWELL **CONCUR**.

---

[11] http://www.dictionaryofconstruction.com/definition/remodeling.html (accessed April 15, 2017).