# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45781

RYAN MC FARLAND and KATHRYN MC FARLAND, )
)
)
Plaintiffs-Appellants, )
)
v. )
)
LIBERTY INSURANCE CORPORATION, )
)
Defendant-Respondent. )

Boise, December 2018 Term

Opinion Filed: January 30, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Lynn G. Norton, District Judge.

District court award of summary judgment in favor of insurance company reversed and remanded for further proceedings consistent with this opinion.

McFarland Ritter, Meridian, for appellant.  Ryan T. McFarland argued.

Anderson Julian & Hull, Boise, for respondent.   Robby J. Perucca argued.

_____

BURDICK, Chief Justice.

The appellants in this case, Ryan and Kathryn McFarland, own real property in Garden Valley, Idaho. The property features three structures: a main cabin; a detached garage with an upstairs "bonus room"; and a pump house containing a geothermal well. The McFarlands insured the property with a policy through the respondent, Liberty Mutual Insurance Group, Inc. ("Liberty"). The policy provides two types of coverage for structures. Coverage A ("Dwelling Coverage") provides up to $188,500 in coverage for "the dwelling on the 'residence premises'. . . including structures attached to the dwelling . . ." and Coverage B ("Other Structures Coverage") provides up to $22,350 for "other structures on the 'residence premises' set apart from the dwelling by clear space."

In February 2017, a radiant heater burst in the bonus room and damaged the garage and its contents. After the McFarlands filed a claim, Liberty stated that the damage was covered

1

under the policy. Believing the damage to fall under the Dwelling Coverage, the McFarlands hired contractors to repair the damage. However, after Liberty paid out a total of $23,467.50 in March 2017, Liberty stated that the coverage was exhausted because the damage fell under the Other Structures Coverage. This led the McFarlands to file a complaint in Ada County district court in July 2017, in which they alleged, among other claims, breach of contract based on Liberty's interpretation of the policy. The parties filed cross motions for summary judgment on the issue of whether the damage fell under the Dwelling Coverage or the Other Structures Coverage. Ruling that the policy unambiguously provided coverage for the garage under the Other Structures Coverage, the district court denied the McFarlands' motion and granted Liberty's. The McFarlands timely appealed. We reverse the award of summary judgment and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The McFarlands own roughly one acre of vacation property in Boise County, Idaho. The vacation property features three structures: (1) a cabin, containing a kitchen, bathroom, and bedroom; (2) a freestanding building which features a bonus room atop a garage; and (3) a freestanding pump house which pumps geothermal water from a well to the other structures for heat.

According to the McFarlands, Kathryn McFarland contacted Liberty around September 2015 to purchase a homeowner's insurance policy for the vacation property. Kathryn described all three structures and explained that the McFarlands regularly used the garage and bonus room as a place for family members to recreate, work, and sleep. Liberty issued the McFarlands a policy providing for four types of coverage: the Dwelling Coverage; the Other Structures Coverage; Coverage C - Personal Property; and Coverage D - Loss of Use.

The Dwelling Coverage provides:

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

The policy does not define "dwelling," but does define "residence premises" as:

a. The one family dwelling, other structures, and grounds; or

b. That part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations.

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

Like the Dwelling Coverage, the Other Structures Coverage also defines its coverage by reference to the "residence premises":

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover others structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to [the Dwelling Coverage]. Use of this coverage does not reduce the [the Dwelling Coverage] limit of liability.

Since first purchasing the policy, the McFarlands have renewed the policy annually and paid their premiums on time and in full.

Around February 15, 2017, a radiant heater in the bonus room failed causing geothermal water to pour out. A continuous flow of hot water soaked the walls and floors of the bonus room and the garage below. Because the property was unoccupied at the time, the McFarlands did not discover the running water for about two days. Upon discovery of this situation, the McFarlands promptly shut off the water and filed a claim with Liberty. Water damage destroyed both physical components of the garage structure (e.g., drywall, doors, overhead garage doors, plumbing and electrical components) as well as the McFarlands' personal property (e.g., a queen bed, leather sofa, ping-pong table, desk, bookshelf, etc.).

Without objection from Liberty, the McFarlands contracted with a water-remediation company for a remediation plan and equipment. By March 9, 2017, around three weeks after the McFarlands reported the damage, Liberty had paid $10,261.14 to the water-remediation company and $13,206.26 to the McFarlands. The McFarlands' out-of-pocket costs for the

3

remediation of the structural damage—not including personal property—was $30,075.91. This amount was for $4,329.17 in invoices for the water-remediation company and $25,746.74 in repair quotes. After an investigation, Liberty informed the McFarlands that the damage was covered under the Other Structures Coverage. Liberty notified the McFarlands that the Other Structures Coverage limit of $22,350 (plus 5% for debris removal) had been reached and Liberty would not issue further payments.

Believing the damage fell under the Dwelling Coverage, the McFarlands disputed Liberty's assessment of coverage and ultimately filed a complaint in Ada County district court alleging breach of contract with damages of $15,869.55 related to lack of payment for structural damage under the policy.[1]

After Liberty filed an answer and demand for jury trial, the McFarlands moved for summary judgment on the breach-of-contract claim, arguing that the policy unambiguously provided coverage for the garage under the Dwelling Coverage. Alternatively, the McFarlands argued that the policy is ambiguous requiring strict construction in their favor. Liberty responded by filing a motion for summary judgment arguing that the policy unambiguously delineated coverage for the garage under the Other Structures Coverage.

Granting Liberty's motion for summary judgment, the district court ruled the policy was unambiguous and dismissed the McFarlands' breach-of-contract claim. The district court determined that the Dwelling Coverage referred to a singular structure, the term "dwelling" is synonymous with "house," and, as a result, the garage and bonus room did not fit the definition of "dwelling" and were therefore covered by the Other Structures Coverage. A final judgment was entered to that effect and the McFarlands timely appealed.

## II.  ISSUES ON APPEAL

A. Is the term "dwelling" ambiguous as used in the McFarlands' homeowner's insurance policy?

B. If "dwelling" is ambiguous, does this Court construe it in favor of the McFarlands?

---

[1]The McFarlands also alleged: breach of the covenant of good faith and fair dealing; bad faith; violation of the Idaho Consumer Protection Act; and unjust enrichment. The complaint further sought damages of $5,680.69 based on loss of personal property under Coverage C – Personal Property. The district court ruled that the McFarlands had not complied with the terms of the policy regarding the personal property, but that they were not prohibited from doing so going forward.

After losing their summary judgment motion on the issue of coverage, the McFarlands stipulated with Liberty to dismiss the remaining claims without prejudice in order to pursue this appeal. The district court entered an order to that effect.

C. Is Liberty entitled to costs and attorney's fees on appeal?

## III. STANDARD OF REVIEW

This Court reviews the grant of a motion for summary judgment de novo and applies the same standard of review the district court used in ruling on the motion. *Tiller White, LLC v. Canyon Outdoor Media*, LLC, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016). Summary judgment is appropriate "only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law." *Fisher v. Garrison Prop. & Cas. Ins. Co.*, 162 Idaho 149, 152, 395 P.3d 368, 371 (2017) (citing *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002)); I.R.C.P. 56. Where, as here, the parties have filed cross motions for summary judgment, the standard of review does not change. *Tiller White, LLC*, 160 Idaho at 419, 374 P.3d at 582 (citing *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004)).

Interpretation of an insurance contract is a question of law. *Fisher*, 162 Idaho at 153, 395 P.3d at 372.

## IV. ANALYSIS

On appeal, the McFarlands argue that the policy unambiguously provides coverage for the garage and bonus room under the Dwelling Coverage and, even if this Court finds the policy ambiguous, then the district court erred by failing to strictly construe the policy in their favor. In reply, Liberty argues the policy unambiguously provides coverage for the garage under the Other Structures Coverage, and, even if "dwelling" is ambiguous, strict construction is inapplicable because the policy does not exclude coverage. Because both parties believe the policy to unambiguously provide coverage for their position, yet make arguments in the alternative, we first address whether the policy is ambiguous and then take up the issue of construing the policy.

**A. An ambiguity exists in the McFarlands' policy because the policy fails to define the term "dwelling" and the term is reasonably subject to differing interpretations.**

The question of "whether a policy is ambiguous is a question of law over which this Court exercises free review." *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 432, 987 P.2d 1043, 1047 (1999). "Beginning with the plain language of the insurance policy, the first step is to determine whether or not there is an ambiguity." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540–41, 66 P.3d 242, 244–45 (2003) (citing *Martinez v. Idaho Counties Reciprocal Management Program*, 134 Idaho 247, 250, 999 P.2d 902, 905 (2000)). If the policy's language

5

is clear, then "the language will be given its plain and ordinary meaning." *Farm Bureau Mut. Ins. Co. of Idaho v. Schrock*, 150 Idaho 817, 821, 252 P.3d 98, 102 (2011) (citing *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 743 (2010)). Likewise, "unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Fisher*, 162 Idaho at 153, 395 P.3d at 372 (citing *Howard v. Oregon Mut. Ins. Co.*, 137 Idaho 214, 218, 46 P.3d 510, 514 (2002)). An ambiguity exists where a provision "is reasonably subject to differing interpretations." *Markel Int'l Ins. Co., Ltd. v. Erekson*, 153 Idaho 107, 109, 279 P.3d 93, 95 (2012).

Because insurance policies are adhesion contracts not typically subject to negotiation between the parties, "all ambiguities in an insurance policy are to be resolved against the insurer. . . ." *Howard*, 137 Idaho at 217, 46 P.3d at 513 (citing *City of Boise v. Planet Ins. Co.*, 126 Idaho 51, 55, 878 P.2d 750, 754 (1994)). "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Clark*, 138 Idaho at 541, 66 P.3d at 245.

### 1. The policy fails to demonstrate an intent to use a definition of "dwelling" other than the common, everyday definition.

This Court will look to the common definition of a term unless there is an indication in the policy that the "dwelling" was intended to carry a technical definition, *Fisher*, 162 Idaho at 153, 395 P.3d at 372, or the term carries a settled legal definition. *Melichar v. State Farm Fire & Cas. Co.*, 143 Idaho 716, 721, 152 P.3d 587, 592 (2007). We find no such indication in the McFarlands' policy.

First, the McFarlands' policy fails to define the term "dwelling" despite defining various other terms. This Court has previously held that failing to define a term when there are other defined terms weighs in favor of ambiguity. *See Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 462, 180 P.3d 498, 501 (2008). Here, the McFarlands' policy defines: "you"; "your"; "we"; "us"; "our"; "bodily injury"; "business"; "insured"; "insured location"; "occurrence"; "property damage"; "residence employee"; and "residence premises". These terms would undoubtedly carry their provided technical definitions. By failing to define the term, "dwelling," the McFarlands' policy does not convey a contrary intent to assign a technical definition to "dwelling" in lieu of its common, everyday definition. *See, e.g.*, *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) ("When words or phrases are undefined in a policy we do not

give them a technical or legal meaning. Rather, undefined words are given their ordinary meaning.").

Second, the McFarlands' policy does not refer to a word or phrase that has a settled legal meaning within this jurisdiction. Liberty is correct to point out that simply because a policy term is undefined does not render it automatically ambiguous. *See Melichar*, 143 Idaho at 721, 152 P.3d at 592 (2007) (holding that the term "occur" was not ambiguous because this Court's prior case law made its meaning clear). But this Court has placed an important caveat on this observation: The "mere fact that a term is undefined in a policy does not make that term ambiguous if it has a settled legal meaning." *Id.* Here, the parties have not provided Idaho case law providing a settled legal meaning of "dwelling." The McFarlands provide two cases interpreting insurance policies which found "dwelling" and "house" to encompass more than one building,[2] and provided other legal contexts in which "dwelling" has been read to support their position. The bulk of the legal definitions provided by the McFarlands show that "dwelling" carries different legal meanings in different contexts, rather than a singular, settled legal meaning that supports their position. But, in general, "dwelling" is most often used as shorthand for "dwelling-house" and denotes "a structure in which human beings sleep." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 302–03 (3d ed. 2011). However, the terms "dwelling" and "dwelling-house" typically name the subject of common-law burglary, which is not the context here. *Id.*

Instead of providing its own definition or referencing a settled legal definition, the policy demarcates the term's possible meaning by reference and description. The Dwelling Coverage states "[t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling; . . ." The policy defines "residence premises" as "[t]he one family dwelling, other structures, and grounds . . . where you reside and which is shown as the 'residence premises' in the Declarations." But the Declarations do not contain a description of the dwelling or the residence premises, only a street address:

---

[2] *See, e.g.*, *N. British & Mercantile Ins. Co. v. Tye*, 58 S.E. 110, 111–12 (Ga. Ct. App. 1907) ("So that the real question is, not whether a cluster of disconnected houses may or may not in some instances constitute a 'dwelling house' (to which proposition we fully agree), but whether it can be fairly understood as a part of the contract of insurance that 'a two-story frame building and its additions,' used as a dwelling house shall also include a servant's house 150 feet away, so as to render the insurer liable for damage by fire to the servant's house, though there was no fire or damage to the two-story frame building."); *Workman v. Ins. Co.*, 2 La. 507, 509 (La. 1831) ("In the common and ordinary acceptation, every thing appurtenant and accessary to a main building would be embraced by [the word 'house']. . . .").

**Insured Location**
138 Castle Mountain Dr
Garden Valley ID 83622-5156

The policy defines "insured location" as "[t]he 'residence premises'; the part of other premises, others structures and grounds used by you as a residence and . . . [w]hich is shown in the Declarations . . . ."

As a result, the policy defines "dwelling" by a series of internal references and description rather than by a technical or settled legal definition. This system of definition by reference and description is not per se ambiguous. For example, such a description would be adequate were there only one structure on the property used for habitation. *See Fisher*, 162 Idaho at 152, 395 P.3d at 371. Likewise, if the policy contained a simple description of the structure or structures intended to be considered "the dwelling" under the policy, there would likely be no question as to whether dwelling referred solely to the cabin or to the cabin and the garage collectively. But, despite being the party in the best position to make clear what "the dwelling" referred to, Liberty failed to provide a definition that clearly defined its scope, so this Court will turn to "the meaning applied by laymen in daily usage" to determine whether "dwelling" is reasonably subject to differing interpretations. *Fisher*, 162 Idaho at 153, 395 P.3d at 372.

**2. Using the meaning of "dwelling" applied by laymen in daily usage yields two reasonable interpretations.**

To determine whether "dwelling" is subject to more than one reasonable interpretation, the meaning applied to "dwelling" by laymen in everyday usage must be determined. *See Fisher*, 162 Idaho at 153, 395 P.3d at 372. An examination of reference materials is helpful in this regard. *Id.* The district court used three online resources: Merriam Webster, Google, and the Cambridge Dictionary. These searches yielded, respectively: "a shelter (such as a house) in which people live"; "a house, apartment, or other place of residence"; and "a place where people live." Concluding "the term dwelling is synonymous with house," the district court ruled that the garage structure could not be a dwelling because it lacked the features of a house, such as a full bathroom and kitchen. The parties both contend that these definitions unambiguously support their position.

The McFarlands rely on the "residence" and "living" definitional elements of "dwelling." They point out that family members "routinely occupy and sleep" in the bonus room and "regularly" use the garage "as a recreational and work space" and both areas "were heated and

8

had lighting for regular use." By contrast, Liberty relies on the district court's analysis, arguing that dwelling "clearly defines a specific type of structure." Liberty states that the McFarlands' interpretation would require "that any structure utilized for any daily living activity" would be covered under the Dwelling Coverage. Liberty continues to say that such an interpretation would "nullify the purposes" of the Other Structures Coverage, because the Other Structures Coverage is supposed to apply to any structure—regardless of use—so long as the structure is not attached to the dwelling. Because we find that both interpretations are reasonable, we hold that the meaning applied by laymen in everyday usage yields two reasonable possibilities.

First, the district court's analysis focusing on whether the garage had all the features of a house is misplaced. That analysis is geared toward determining whether the policy covers two separate dwellings, rather than whether a singular dwelling can encompass two separate structures. The policy provides for only one dwelling by using the singular noun, "dwelling." *See* Webster's Third New Int'l Dictionary 706 (1971). If the policy contemplated multiple dwellings, it could have used the plural "dwellings" instead. *See id.* Likewise, the district court's determination that the policy reference to "the dwelling" indicates an intention to refer to a singular structure is similarly misplaced. The definite article "the" in this situation is "used as a function word to indicate that the following noun . . . refers to . . . something previously mentioned or clearly understood from the context or the situation." *See* Webster's Third New Int'l Dictionary 2368 (1971). The presence of the definite article "the" in this situation is of little help in determining whether the singular noun "dwelling" can encompass two buildings.

Second, based on the definitions used by the district court, it is unclear whether "dwelling" is synonymous with house. Upon examination of additional reference materials, it appears that while "house" and "dwelling" share a definitional element, they are not true synonyms. A survey of multiple dictionaries reveals that the principal element of a dwelling is residence or habitation. *See, e.g.*, The Oxford English Dictionary V 3 (2nd ed. 1991) ("2. Continued, esp. habitual residence; abode. . . . † b. 'Residence', accommodation. *Obs*. . . . 3. *concr*. A place of residence; a dwelling-place, habitation, house."); Webster's Third New Int'l Dictionary 706 (1971) ("a building or construction used for residence: abode, habitation"); Merriam-Webster's Collegiate Dictionary 389 (11th ed. 2003) ("a shelter (as a house) in which people live."); The New Oxford American Dictionary 532 (2001) ("a house, apartment, or other place of residence."); Webster's II New College Dictionary (1999) ("An abode: residence.").

These definitional elements suggest that determining whether the space or structure qualifies as a "dwelling" depends upon whether it is inhabited. However, the definitions vary on how they define the inhabited space. Some use the more nebulous "place" while others use the more specific "structure."

To illustrate, the Oxford English Dictionary provides that where, as here, "the dwelling" refers to a concrete place, "dwelling" means "[a] place of residence; a dwelling-place, habitation, house." The Oxford English Dictionary V 3 (2nd ed. 1991). Yet this definition does not, as contended by Liberty, "clearly define[] a specific type of structure." Rather, the structural possibilities are "a place of residence," "habitation," or "house." Indeed, while the habitation requirement is the primary element of "dwelling," the secondary spatial grouping can be categorized into two categories: (1) the more definite, "house" or (2) the more nebulous "place" or "habitation." Important here is that one spatial element does not predominate over the other. Both are reasonable interpretations under the common definition of the word. Of the reference materials cited, all definitions provided that the place must be used as a residence. Three listed the open-ended term, "abode," in the definition. *See* Webster's Third New Int'l Dictionary 4 (1971) (defining "abode" as "a place where one abides or dwells : home"). Likewise, three provided "house" in the definition, although most often as an example or within a list. *See, e.g.*, Merriam-Webster's Collegiate Dictionary 389 (11th ed. 2003) ("a shelter (as a house) in which people live."); The New Oxford American Dictionary 532 (2001) ("a house, apartment, or other place of residence."). Therefore, one definition does not control over the other.

Accordingly, the more general "place of residence" and the more definite "house" are both reasonable interpretations of the common definition of "dwelling."

### 3. Reading the policy as a whole does not advance one interpretation of "dwelling" over the other.

This Court "must construe the policy as a whole, not by an isolated phrase." *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (internal quotation and citation omitted). Although reading a term or provision in isolation can create an ambiguity, reading the policy as a whole can remove the ambiguity by rendering one of the possible interpretations unreasonable. Here, the policy supports both possible interpretations of "dwelling." Therefore, both interpretations are reasonable and the term is ambiguous as used in the policy.

Contrary to Liberty's argument that a multi-structure definition of dwelling would "nullify" the purpose of the Other Structures Coverage, the policy permits such an interpretation due to its scheme of delineating coverage by reference. The practical effect of a two-structure dwelling would be two points of reference for the competing coverages; here, the cabin and the garage. The Dwelling Coverage would cover both structures as well as any structures attached to them. The Other Structures Coverage would continue to cover those structures set apart from the two dwelling structures by clear space. Here, the structure set apart from the cabin and garage by clear space is the pump house. Because the Other Structures Coverage still covers the pump house, the coverage is not nullified. This fact also shows that an insured with the understanding that "dwelling" referred to more than one structure would not be alerted to Liberty's contrary interpretation based solely on the policy's language.

Further bolstering the reasonableness of the McFarlands' interpretation is that other courts have found that "dwelling" is not limited to a singular structure in similar policies. In addition to the cases cited by the McFarlands, the Kansas Supreme Court also weighed in on the issue in *Coffey v. Girard Insurance Company of Philadelphia, Pennsylvania* when it had to determine coverage for a property's second structure that was destroyed in a fire. 322 P.2d 345, 347 (1958). In *Coffey*, the insured argued that the second structure was fully covered as part of the "dwelling" or "building equipment and fixtures and outdoor equipment appertaining to the service of the premises." *Id.* The insurance company argued the structure was entitled to 10% of that coverage as a "private structure appertaining to the dwelling." *Id.* The second structure contained a bathroom, a shower room, and a general utility room. *Id.* It also housed the hot water tank that supplied hot water to the kitchen of the main structure. *Id.* The main structure featured two bedrooms, a screened porch, a living room, kitchen, and dining area. *Id.* Both structures received cold water through a common well and plumbing as well as shared the same gas, electric, and sewer lines. *Id.*

While ultimately rejecting the insured's argument that the second structure was part of the dwelling, the court nevertheless held the building was fully covered as "building equipment and fixtures . . . appertaining to the service of the premises." *Id.* at 348. Relevant here, however, is the *Coffey* court's statement that the insured's argument contending that the second structure was part of the dwelling was unpersuasive because the second structure was not used for habitation. *Id.* ("It is inherently clear from the facts that the second structure was not in any way

11

occupied by the insureds as a 'dwelling' but only 'as equipment and fixtures appertaining to the service of the dwelling.'"). This conclusion supports the reasonableness of a multi-structure dwelling definition within the context of an insurance policy. Here, the cabin and garage are less complementary than the structures in *Coffey*, but they nevertheless share common plumbing and electricity. Though most important in this case is that the McFarlands' garage boasts what the *Coffey* structure lacked: active habitation. It is alleged that members of the McFarland household regularly occupied the structure for work, recreation, and sleep. Because the policy does not foreclose the possibility of a multi-structure dwelling, the McFarlands' interpretation of the term is a reasonable one.

In conclusion, the McFarlands' policy fails to provide a clear definition of "dwelling." The policy fails to define the term and lacks an intent to assign a technical definition or reference a settled legal definition. The common everyday usage of the term yields two reasonable interpretations of the term. Because the policy does not render one of these interpretations unreasonable, the policy is reasonably subject to conflicting interpretations. Therefore, we hold that the McFarlands' policy is ambiguous regarding whether "dwelling" covers only the cabin or both the cabin and the garage.

**B. Because the term "dwelling" is ambiguous as used in the McFarlands' policy, we construe it in the McFarlands' favor.**

This Court has held that "[a]ny ambiguities should be resolved in favor of the insured, and where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured." *Cherry v. Coregis Ins. Co.*, 146 Idaho 882, 884, 204 P.3d 522, 524 (2009) (citing *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981)). The McFarlands argue that this Court should strictly construe the ambiguous language against Liberty. Liberty argues that strict construction is applicable only when the provision seeks to exclude coverage. Yet, as Liberty's counsel conceded at oral argument, this Court has held, "because insurance policies are contracts of adhesion that are not usually subject to negotiation between the parties, any ambiguity in a policy is construed strongly against the insurer." *Farm Bureau Mut. Ins. Co. of Idaho v. Schrock*, 150 Idaho 817, 821, 252 P.3d 98, 102 (2011) (quoting *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 743 (2010)). In line with this rationale and counsel's concession, we construe "dwelling" as used in the McFarlands' policy to encompass both the cabin and the garage.

### C. Attorney's Fees

Liberty requests attorney's fees under sections 12-120(3) and 12-121 of the Idaho Code. Both statutes require Liberty to prevail on appeal in order to be entitled to attorney's fees. Because Liberty has not prevailed on appeal, they are not entitled to attorney's fees under either statute. *Partout v. Harper*, 145 Idaho 683, 690, 183 P.3d 771, 778 (2008). Consequently, we decline to award Liberty attorney's fees on appeal. The McFarlands do not request attorney's fees on appeal.

## V.   CONCLUSION

For the reasons stated above, the McFarlands' policy contains an ambiguity regarding whether the term "dwelling" encompasses just the cabin or both the cabin and garage. Because we find the term to be ambiguous as used in the policy, we construe it in favor of the McFarlands and find that the term encompasses both the cabin and garage. We reverse the award of summary judgment in favor of Liberty, and remand the case to the district court for further proceedings. Costs to the McFarlands.

Justices BRODY, BEVAN, STEGNER and HORTON, **CONCUR.**